# EXHIBIT A

Filed
D.C. Superior Court
03/22/2018 15:22PM
Clerk of the Court

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| KENDRA DAVENPORT,<br>18671 Lincoln Road<br>Purcellville, VA 20132<br><br>       *Plaintiff*,<br><br>v.<br><br>FAMILY MATTERS OF GREATER WASHINGTON, INC.,<br>425 I Street NW Suite 700<br>Washington, DC 20036,<br><br>Serve Registered Agent:<br><br>    Doug Damron<br>    1401 Church Street NW<br>    Washington, DC 20036<br><br>       *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. **2018 CA 001968 B** |

## CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF
## AND DEMAND FOR JURY TRIAL

Plaintiff Kendra Davenport brings this suit against Family Matters of Greater

Washington, Inc. ("FMGW") for claims arising under the District of Columbia Whistleblower

Protection Act, D.C. Code §§ 1-615.51, *et seq.* ("DCWPA"), wrongful discharge in violation of

public policy under the common law of the District of Columbia, and the False Claims Act, 31

U.S.C. § 3730(h) ("FCA").

### PARTIES

1.    Davenport is a resident of Purcellville, Virginia, and is a former employee of

FMGW. Davenport is a proper plaintiff in this action as she was an "employee" for the purposes

of the DCWPA and FCA.

1

2. FMGW is a non-profit corporation incorporated in the District of Columbia and with its headquarters in the District of Columbia. It is a proper defendant in this action because it is an "employer" for the purposes of the DCWP and FCA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 because the claim arises under the laws of the United States of America.

4. The Court has personal jurisdiction over Defendant FMGW because it has substantial and deliberate contacts with the District of Columbia, and it conducts business in the District of Columbia at 425 I Street, N.W.

5. The Court has supplemental jurisdiction over the claims brought under the common law of the District of Columbia pursuant to 28 U.S.C. § 1367 because the claims arise from the same nucleus of operative fact as the claims that arise under the laws of the United States of America.

6. Venue in this Court is proper under 28 U.S.C. § 1391 because of FMGW's significant and deliberate contacts with this district and its presence in the District of Columbia.

7. Venue in this Court is proper under 28 U.S.C. § 1391 because the substantial majority of the events giving rise to this claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

*FMGW is a Recipient of Federal and D.C. Government Funds*

8. FMGW is a D.C. non-profit organization headquartered at 425 I Street, N.W. Washington, D.C. 20001. It purports to provide mental health and human social services to residents in the District of Columbia and Maryland.

9. Tonya Smallwood is FMGW's chief executive officer and president, and FMGW

2

also has a nine-member board of directors of which Smallwood is a member.

10.     Nearly all of FMGW's income is derived from contracts and grants provided by the government of the District of Columbia and the federal government. For example, FMGW is a recipient of two U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration ("SAMHSA") grants.

11.     FMGW is also a subcontractor of the government of the District of Columbia Child and Family Services Agency through its partnership with The National Center for Children and Families (NCCF).

12.     FMGW uses funds from government contracts and grants to pay part of its overhead costs, including its lease, building renovations and maintenance, and employee salaries.

*Apparent Conflicts of Interest Arise With Respect To Government Funds*

13.     Smallwood tasked Doug Damron, a FMGW board member and commercial real estate agent, to identify 60,000 square feet of vacant office space in downtown Washington, D.C. and to broker the sale of FMGW's fully-paid-for Logan Circle office building.

14.     Damron brokered the sale of FMGW's fully-paid-for Logan Circle office building for $14.5 million, and he received a substantial commission as a result of his work brokering the sale of the Logan Circle building.

15.     Damron, at Smallwood's instruction, also secured FMGWs acquisition of a lavish 23,000 square foot office suite located at 425 I Street, N.W. Damron also received a commission as a result of securing the lease on FMGW's new office.

16.     FMGW's headquarters office suite is fully equipped with frosted glass and marble-adorned office space, remote operated equipment, and personal televisions. It supports approximately fourteen employees at one time.

17.     FMGW's lease, and building renovations and maintenance are factored into FMGW's overhead costs on its contracts and grants with the Government.

*Davenport Learns Of FMGW's Gross Mismanagement of Public Funds and Conflicts of Interest*

18.     In or about January 2017, FMGW hired Davenport as its Senior Chief of Development, Communications, and International Development.

19.     Soon after Davenport began working, she learned from chief financial officer, Felton Magee, that Smallwood and FMGW's board of directors had "run FMGW's finances into the ground," or words to that effect

20.     In or about early February 2017, Davenport discussed FMGW's inability to afford rent or sustain its programs and services with Magee and acting deputy executive director, Cheri Sanzi.

21.     Davenport immediately noticed Smallwood's constant absence from FMGW's headquarters even though Smallwood paid herself a salary of approximately $300,000. Davenport also learned that Smallwood used state and federal government funds to pay for personal car rides, hotel stays, travel abroad, and other personal ventures.

22.     Davenport also learned that Smallwood hired as consultants numerous unqualified personal contacts using state and federal government grants. Davenport discussed FMGW's use of consultants with Magee and expressed her concern that the consultants appeared "to do little or nothing." In response Magee confirmed that virtually all of the consultants were Smallwood's friends.

23.     For example, Smallwood hired Jayson Williams, president and CEO of the lobbying firm Mayson-Dixon Strategic Consulting, as an FMGW consultant and paid him $84,000per year to tend to her personal ventures. Davenport also discovered that Smallwood

4

provided Williams and his staff with a personal office at FMGW's lavish headquarters that is partially accounted for in overhead costs through state and federal government contracts and grants.

24.      In or about early February 2017, Davenport learned that Smallwood used state and federal government funds to pay the expenses for a trip abroad for her herself, her husband and two FMGW consultants, including Williams.

25.      Smallwood also hired a friend as a consultant and placed her in a managerial position on the Mental/Behavioral Health program funded by the D.C. government.  The consultant had no experience relative to mental or behavioral health issues, and Smallwood's only reason for hiring the consultant (and using state and federal government funds to compensate her) was that the consultant was Smallwood's friend.

*Davenport Discloses to Concerns About the Misuse of Government Funds*

26.      In or about late January 2017, Damron told Davenport that he did not have confidence in Smallwood's management of FMGW and warned Davenport not to do "anything to threaten Smallwood or make her feel insecure."  Damron also discussed Smallwood's prior retaliation against employees who "challenged her."

27.      On multiple occasions from in or about February 2017 to in or about April 2017, Davenport emailed Smallwood reports in which Davenport recommended taking actions to mitigate FMGW's misuse of state and federal government funds. Davenport also verbally discussed with Smallwood and Magee FMGW's need to curtail payment to Smallwood's personal friends and contacts and reported concerns about FMGW's inability to comply with the terms of its state and federal grants in such circumstances.

28.      Davenport also reported to Magee that FMGW was danger of losing critical

5

government grants and contracts as result of Smallwood's decisions to place her unqualified friends in charge of state and federally funded projects.

29.     When Davenport questioned Magee as to how FMGW maintained its compliance with state and federal government contracts and grants, Magee responded that Smallwood fabricated information to obtain compliant status. Davenport objected to Smallwood's practice of providing false information to the governments, but Magee advised that Smallwood would "handle it," or words to that effect.

30.     Magee also cautioned Davenport not to question Smallwood or do anything to "lose [Smallwood's] trust" because Smallwood would terminate her employment if she did. Sanzi also warned Davenport against disclosing her concerns to FMGW's board of directors and stated that Davenport "would lose her job" if she did.

*Davenport Escalates her Concerns to Smallwood.*

31.     On February 14, 2017, Davenport traveled to Georgetown Hospital to meet Smallwood. During this meeting Davenport reported concerns about FMGW's misuse of state and federal government funds and that it was at risk of losing its government contracts and grants because of FMGW's non-compliance with managerial and financial requirements. Davenport also reported to Smallwood that FMGW risked being found non-compliant because of Smallwood's decision to place unqualified friends and contacts in charge of government contracts.

32.     Smallwood did not address any of Davenport's concerns but instead changed the topic of conversation. Thereafter Davenport telephoned Damron and reported her concerns about Smallwood's unwillingness to address FMGW's wasteful misuse of state and federal government funds and conflicts of interest.

*Davenport Discloses Her Concern about Retaliation and Is Immediately Terminated*

33.     In or about March 2017 Smallwood instructed FMGW employee Robyn Goldsmith to spy on Davenport and report on Davenport's actions. Thereafter Goldsmith reported Smallwood's instructions to Davenport and resigned her employment with FMGW.

34.     Davenport met with Shiria Anderson, FMGW's head of Human Resources, and disclosed that Smallwood had instructed Goldsmith to spy on Davenport. In response Anderson advised Davenport that she would speak with Smallwood about Davenport's allegations.

35.     In late March 2017, Davenport reported to Smallwood complaints of being retaliated against for disclosing issues pertaining to FMGW's use of government funds and Smallwood's instructions for Anderson to "spy" on Davenport.  Thereafter, on or about April 11, 2017, FMGW terminated Davenport's employment without explanation.

36.     Davenport has been damaged by FMGW's illegal actions, including sustaining economic damages and mental anguish. Such damages are continuing in nature.

**COUNT I**
**D.C. Whistleblower Protection Act,**
**D.C. Code §§ 1-615.51, *et seq.* ("DCWPA")**
**Retaliation**

37.     Davenport hereby incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

38.     Davenport is an "employee" as defined in D.C. Code § 2-1401.02(9).

39.     FMGW is an "employer" as defined in D.C. Code § 2-1401.02(10).

40.     FMGW is a contractor of the District of Columbia as defined in D.C. Code § 2-223.02.

41.     Smallwood is a "supervisor" as defined in D.C. Code § 2-223.01(9).

42.     Davenport engaged in legally protected activity under the DCWPA when she

7

disclosed her concerns of FMGW's gross misuse of public funds to Damron, Smallwood, Magee and Sanzi.

43.     FMGW took a materially adverse action against Davenport by abruptly terminating her after protected activity.

44.     A causal connection exists between this adverse action and Davenport's protected activity.

45.     To redress the harms she suffered as a result of the acts and conduct of FMGW in violation of D.C. Code §§ 1-615.51, *et seq.*, Plaintiff is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including, but not limited to, reinstatement, restoration of lost benefits, backpay and interest on backpay, compensatory damages, injunction, and reasonable costs and attorneys' fees.

## COUNT II
### Wrongful Termination
### In Contravention of the Public Policy of the District of Columbia

46.     Plaintiff incorporates the allegations set forth in foregoing paragraphs as though fully alleged herein.

47.     At all times relevant to this complaint, FMGW employed Plaintiff and controlled the terms and conditions of her employment.

48.     At all times relevant to this complaint, FMGW was a grantee or subgrantee to federal and D.C. government grants.

49.     Federal acquisition regulations espouse a public policy that impose upon FMGW legal duties to avoid conflicts of interest in applying for and receiving federal awards. *See, e.g.,* 2 C.F.R. §§ 200.100, 200.101, 200.112; and 200.318

50.     FMGW, through the actions of its Smallwood and its board of directors, failed to

8

disclose conflicts of interest related to the administration of federal and state funds. Such conflicts of interest include hiring unqualified and inexperienced personal friends and contacts to oversee Smallwood's personal ventures and FMGW's government contracts and grants, as well as Damron's involvement and substantial commission from the sale of FMGW's Logan Circle office building.

51.     The District of Columbia recognizes a strong public policy against conflicts of interest as evidenced by federal regulations governing conflicts of interest related to the administration of federal funds, namely 2 C.F.R. §§ 200.100, 200.101, 200.112, and 200.318.

52.     FMGW terminated Plaintiff's employment a short time after she voiced opposition to the above identified conflicts of interest.

53.     FMGW's termination of Davenport violated the public policy.

54.     As a result of FMGW terminating Davenport's employment, Davenport has suffered economic and emotional distress damages.

<u>**COUNT III**</u>
**False Claims Act**
**31 U.S.C. § 3730(h)**
**Retaliation**

55.     Plaintiff incorporates the allegations set forth in foregoing paragraphs as though fully alleged herein.

56.     Plaintiff is an "employee" within the meaning of the False Claims Act.

57.     FMGW is an "employer" within the meaning of the False Claims Act.

58.     Plaintiff engaged in protected activity under the False Claims Act when she objected to FMGW providing false statements or information to the state and federal governments in order to obtain state or federal grants.

59.     Plaintiff reasonably believed that, but-for her protected disclosures, FMGW

9

would have submitted false information to the state and federal governments that would have led to the government to make payment based on that false information.

60.    FMGW – through Magee, Smallwood, Damron, and others – had knowledge of Plaintiff's protected activity.

61.    FMGW, in terminating Plaintiff's employment, retaliated against Plaintiff because of her protected conduct.

62.    The temporal proximity between Plaintiff's protected conduct and FMGW's decision to terminate her employment is suggestive of causation.

63.    As a result of FMGW's unlawful retaliation against her, Davenport has suffered monetary and emotional distress damages.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff respectfully requests that he be awarded the following relief against FMGW:

a.    Economic damages for lost compensation, including double back-pay, and damages to Plaintiff's career, reputation, and earning capacity in an amount to be determined at trial;

b.    Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

c.    Punitive damages to be determined at trial;

d.    Reasonable costs and experts' and attorneys' fees; and

e.    Any other such relief that the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for any and all issues proper to be so tried.

Dated:  March 22, 2018                    Respectfully submitted,


                                          _ /s/ Andrew M. Witko_____
                                          R. Scott Oswald, D.C. Bar No. 458859
                                          Andrew M. Witko, DC Bar  No. 155251
                                          The Employment Law Group, P.C.
                                          888 17th Street, N.W., 9th floor
                                          Washington, D.C. 20006
                                          (202) 261-2806
                                          (202) 261-2835 (facsimile)
                                          soswald@employmentlawgroup.com
                                          awitko@employmentlawgroup.com
                                          *Counsel for Plaintiff*

11

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH
INFORMATION SHEET

Kendra Davenport

vs

Family Matters of Greater Washington, Inc.

Case Number: **2018 CA 001968 B**

Date: March 22, 2018

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Andrew M. Witko | R. Scott Oswald | Relationship to Lawsuit |
| Firm Name: The Employment Law Group, P.C. | ☒ Attorney for Plaintiff |
| Telephone No.: 202-261-2836    Six digit Unified Bar No.: 155251 | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☒ 12 Person Jury
Demand: $ 1,000,000    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar#: _____

## NATURE OF SUIT:    *(Check One Box Only)*

### A. CONTRACTS

| | COLLECTION CASES | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

### B. PROPERTY TORTS

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

### C. PERSONAL TORTS

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability
- [ ] 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [X] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as Judgment [ D.C. Code § 2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code § 42-3301, et seq.)

- [ ] 21 Petition for Subpoena [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1) (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

3/22/18
_____
Date

CV-496/ June 2015

# EXHIBIT B



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

KENDRA DAVENPORT
    Vs.                                C.A. No.     2018 CA 001968 B
FAMILY MATTERS OF GREATER WASHINGTON, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge JOHN M CAMPBELL
Date:  March 23, 2018
Initial Conference: 9:30 am, Friday, June 22, 2018
Location:  Courtroom 519
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief     Judge     Robert     E.     Morin

# EXHIBIT C

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## PROBATE DIVISION

_____ LIT _____
(linked to _____ )

Estate of _____

Kendra Davenport

_____
Plaintiff

vs.

Family Matters of Greater Washington, Inc.

_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons. A copy of the Answer must also be mailed to each of the other parties named on the complaint.

File the Answer with the Court either before service or within five (5) days after you have served it. The Answer must be filed in Room 314, Building A, 515 Fifth Street, Northwest between 8:30 a.m. and 5:00 p.m., Mondays through Fridays but not Saturdays, Sundays or holidays.

**IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR MONETARY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT _FAIL TO ANSWER WITHIN THE REQUIRED TIME_.**

If you wish to talk to a lawyer, and need information regarding obtaining one, you may wish to contact the Lawyer Referral Service of the D.C. Bar (202-331-4365). If you feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help.

Register of Wills
Clerk of the Probate Division

Andrew M. Witko

_____
Name of Plaintiff's Attorney

888 17th Street, N.W., 9th floor

BY: _____

_____
Deputy Clerk

Washington, D.C. 20006

_____
Address

Date: _____

202-261-2806

_____
Telephone

March 2012 – 1210.10.v2

# EXHIBIT D

## In the Superior Court for the District of Columbia

Kendra Davenport,
Plaintiff,

vs.                                          Case Number: 2018 CA 001968 B

Family Matters of Greater Washington, DC,
Defendant.

### Declaration of Return by Private Process Server

The undersigned hereby certifies that valid service of process was executed upon Family Matters of Greater Washington, DC on the 29th day of March, 2018 at 4:00 p.m., at 1899 Pennsylvania Avenue, NW, Suite 300, Washington, DC, 20009, by personally delivering and leaving a copy of the following document with Doug Damron, who is the registered agent for Family Matters of Greater Washington, DC: 1) Civil Complaint for Equitable and Monetary Relief; 2) Summons; 3) Initial Order and Addendum; 4) Addendum to Initial Order Affecting All Medical Malpractice Cases.

Doug Damron is described as: A 42-year-old thinly-built white male, approximately 6'3" tall, with black hair.

THE UNDERSIGNED CERTIFIES HE IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN (18) YEARS.

I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING DOCUMENT ARE TRUE AND CORRECT.

Neal Barton, Investigator
Dinolt Becnel & Wells Investigative Group, LLC
1806 Vernon Street, NW, Suite 300
Washington, DC 20009
202-638-5000
Date: March 30, 2018